1  William Hanson, SBN 215226
**LAW OFFICES OF WILLIAM G. HANSON**
2  2121 North California Boulevard
Suite 290
3  Walnut Creek, CA 94596
Phone:(925) 974-3321
4  E-mail: bill@williamhansonlaw.com

5  Attorney for Plaintiff, Klaus Permer

6

7                    **UNITED STATES DISTRICT COURT**

8                  **NORTHERN DISTRICT OF CALIFORNIA**

9                  **SAN FRANCISCO/OAKLAND DIVISION**

10

| | | |
|---|---|---|
| **KLAUS PERMER, an individual** | ) | **CASE NO:** |
| | ) | |
| **Plaintiff,** | ) | **COMPLAINT FOR:** |
| | ) | |
| v. | ) | 1. **BREACH OF CONTRACT;** |
| | ) | 2. **CONVERSION;** |
| **NOBLESPIRIT, LLC, a New Hampshire** | ) | 3. **FRAUD,** |
| **a limited liability corporation; JOE** | ) | **Intentional** |
| **CORTESE, an individual.** | ) | **Misrepresentation and** |
| | ) | **Deceit, Promissory Fraud,** |
| **Defendants.** | ) | **Concealment,** |
| | ) | **Embezzlement** |
| | / | 4. **FINANCIAL ELDER ABUSE** |
| | | 5. **NEGLIGENCE.** |

18

19                             **DEMAND FOR TRIAL BY JURY**

20        Plaintiff, KLAUS PERMER ("Permer"), brings this action, complaining against Defendants

21  NOBLESPIRIT, LLC, ("Noblespirit") and JOE CORTESE ("Cortese") alleging as follows:

22

23                             **INTRODUCTION**

24        1.       This case concerns the consignment of an extensive world-wide stamp collection (the

25

26

27                                      1

"Collection") ranging in time from the mid-1800s through the 1970s. The Collection contains, or contained, at least one example of each stamp from a substantial majority of the world's stamps created within that time frame. The Collection, which was begun in the 1940s by the late philatelist, Dr. Erwin Permer, is owned by the Plaintiff and son of Dr. Permer, the philatelist Klaus Permer. The two men began assembling the Collection when Klaus Permer was a small child and the Collection was built over the course of Klaus Permer's lifetime. Klaus Permer is now 84 years old and the full Collection contains or contained 257,143 stamps plus duplicates, plate blocks, first day covers, and United States Postal Service year sets.

2.      On April 26, 2018, Permer contracted with Noblespirit, through its owner, agent, and the individual who was to be the principal individual both for the possession and sale of the Collection or parts of the Collection as well as the individual responsible for safeguarding the entire Collection, Defendant Cortese. Defendant Cortese personally took possession of the entire Collection on that same date. (A true and accurate copy of the contract, the "Contract," between the parties is attached to this Complaint as Exhibit A).

3.      Defendants Cortese and Noblespirit were to sell the Collection in lots and pieces through Noblespirit's "internet web auction services." In addition to on-line sales, some sales were also made "in-store" at Noblespirit's brick and mortal facility in Pittsfield, New Hampshire.

4.      Since contracting for the piecemeal sale and taking possession of the Collection, Noblespirit has sold off a small part of the Collection but has yet to provide Permer with proper compensation or an accounting pursuant to their agreements. Further, and even more egregiously, Defendants and each of them have failed to safeguard substantial portions of the Collection, particularly high value portions of the Collection, from loss due to theft, misappropriation, embezzlement, concealment, fraud, looting or gross negligence.

5.     Permer began complaining to Cortese in mid-July 2018 concerning the failure to compensate and document both the Collection and sales from the Collection and continued to complain to Cortese and Noblespirit throughout the remainder of 2018 about the inadequate compensation and the failure to properly document and account for sales. Permer terminated the agreement with Noblespirit, in a writing dated December 27, 2018.

6.     Since terminating the agreement, Defendants have substantially delayed and withheld the return of Permer's property and to this day have not provided the accounting called for pursuant to the Contract and agreements, the compensation called for pursuant to their agreement and, most importantly, the return of some 2161 of the most valuable stamps.

7.     Defendants have misrepresented that they have returned all of Permer's Collection, save those stamps that they sold and for which their sale has been properly recorded. Defendants have further misrepresented that for stamps that were sold and whose sale was properly recorded that proper compensation has been made to Permer.

8.     Despite that the agreement called for a one month notice of termination, making the termination effective on January 31, 2019, the return of Permer's property has either been repeatedly delayed for months or, in the case of the 2161 high value stamps, has been denied completely and possession has never been returned to Plaintiff.

9.     To date, Defendants have failed and refused to properly compensate Permer for stamps sold to the extent of $41,793.69. Further, Defendants have lost, misappropriated, embezzled, concealed, defrauded, converted, looted and/or stolen from Plaintiff some 2161 stamps whose value is estimated to be $1,418,336.35. Other actual losses suffered include the loss or destruction of binders which contained the stamps to the extent of $3,330.00 and anticipated excess shipping and insurance charges incurred due to the piecemeal return of the collection to Permer.

10.     Defendants claim that all of Permer's property has been returned to him, although they admit that no accounting has yet been provided.  Defendants have repeatedly misrepresented that they will get to it.

## PARTIES

1.     Plaintiff Permer is an individual residing and domiciled in the Town of Brentwood, Contra Costa County, California.

2.     Defendant Noblespirit is a New Hampshire limited liability corporation with its principal place of business in Pittsfield, New Hampshire. All of the members of Defendant Noblespirit are domiciled in and citizens of New Hampshire.

3.     Defendant Cortese is an individual who is residing and domiciled in New Hampshire.

## JURISDICTION AND VENUE

4.     This court has original subject matter jurisdiction because there is complete diversity of citizenship among Plaintiff and Defendants and the amount in controversy exceeds, $75,000.00, exclusive of interest and costs, in accordance with 28 U.S.C. 1332.

5.     This court is the proper venue for this action and this court has personal jurisdiction in this action because Plaintiff resides in Contra Costa County, both Defendants do business in Contra Costa County, the agreements between Plaintiff and Defendants and all of the negotiating activities, inspections, due diligence activities and signing of the contract by the parties as well as the taking of possession of the Collection all occurred in Contra Costa County.

6.     Venue is most appropriate in this district, pursuant to 28 U.S.C. 1391(b)(2), as more than a substantial part of the events or omissions giving rise to this claim occurred in Contra Costa County, California.

COMPLAINT

**INTRADISTRICT ASSIGNMENT**

7.     Assignment in the San Francisco Division or Oakland Division of the United States District Court for the Northern District of California is proper pursuant to Rule 3-2(d) of the Civil Local Rules because more than a substantial part of the events giving rise to the claims alleged arose in Contra Costa County.

**FACTUAL ALLEGATIONS**

8.     In April, 2018, Plaintiff Permer and Defendant Cortese began discussions concerning the possible sale or consignment of Permer's Collection. Cortese is an owner, operator and member of Defendant Noblespirit, a New England brokerage house dealing in collectibles including stamps. Cortese met with Permer at Permer's home in Brentwood, California on April 26, 2018 and brought along, Mr. Matt Gillette who is also in the employ of Noblespirit. Also present with Defendant Cortese was a representative of EBay with experience in selling collectibles on-line in order to examine the collection for the purpose of helping Defendants Noblespirit and Cortese consider an agreement between Permer and Noblespirit to liquidate the collection via a consignment agreement. Additionally, friends of Plaintiff, Keith Lamport and John Torres were also present.

9.     Upon the conclusion of the examination of the stamps by Cortese and his staff, Cortese presented Permer with a written consignment agreement which Permer and Cortese both signed on April 26, 2018. ("Exhibit A").

10.     The Contract (Ex. A) called for Noblespirit to auction the stamps through its internet web auction service. The items were to be sold either by Noblespirit unreserved to the highest bidder through Noblespirit's auction services or, by agreement, specific stamps could be sold "with reserves, starting prices or store retail prices." The Contract also called for Noblespirit to calculate the sales at the end of each month and pay Permer by the 15th of the following month for items sold and paid for.

11.     The Contract identifies, as an attachment, an exhibit A and states that it defines the initial set-up fee per item and sales commission per item. Permer was never provided with any exhibit A attached to the Contract and signed the document without ever seeing any such exhibit and to this date has never seen any exhibit pertaining to fees or otherwise in regard to this Contract. The Contract also states that Defendant Noblespirit is entitled to "auction fees" and "final fees" but these terms are also nowhere defined. Conspicuously missing from the Contract between the parties is any breakdown whatsoever, in the form of percentages, flat fees or otherwise for the payment of Noblespirit's commission or "set up fees" or "auction fees" or "final fees."

12.     During the negotiations, Noblespirit, through Cortese, agreed with Permer, in front of the numerous witnesses present, that the commission percentage would be 15%.

13.     The Contract (Ex. A) also provides that Noblespirit will provide the consignor (Permer), after each closing date of Consignor's items, with an auction statement or access to a "consignor designated portal" and that defendant Noblespirit" will calculate the sales at the end of each month and pay Consignor by the 15th of the following month…"

14.     The contract, drafted completely by and for Noblespirit, contains numerous irregularities. In addition to failing to attach an exhibit incorporated by reference, the contract is riddled with undefined terms including "this entry," "Exhibit A," and "MBA," "auction fees" and "final fees," "set up fees" and even the "commission."

15.     On April 26, 2018, Cortese took possession of and shipped Permer's entire Collection of 257,143 stamps plus duplicates, plate blocks, first day covers and USPS year sets from Brentwood, California to Noblespirit's place of business in Pittsfield, New Hampshire. Along with the Collection, Permer provided to Noblespirit and Cortese, a flash drive containing the entire inventory of stamps in the Collection.

16.     Nobilespirit and Cortese provided Permer with access to its "Consignment Portal" giving Permer the ability to track and follow Noblespirit's sales of his stamps and the dollar amounts for each sale. Permer tracked the early sales through the portal and when checks were cut by Noblespirit to Permer, it was obvious that Noblespirit was taking a much larger cut than was ever agreed to.

17.     Starting in mid-July of 2018, Permer began complaining to Cortese about the excess being taken by Noblespirit and Cortese responded by suggesting that the 85% -15% split would not allow him to make a reasonable profit.

18.     Given that Noblespirit and Cortese had taken possession of the Collection and the time and expense of both preparing the Collection for possession by Noblespirit and Cortese and the time and expense that would be involved in returning the Collection to Permer's possession, Permer determined to work out the differences and make the concession for Noblespirit and Cortese and reluctantly agreed to change the split to 75%-25%.

19.     After the 75%-25% split was agreed to, when subsequent checks were cut to Permer, the new checks showed that Noblespirit and Cortese were continuing to take amounts well in excess of the 25%. Permer continued to complain to Cortese but to no avail.

20.     Throughout the second half of 2018, despite repeated attempts by Permer to work with Cortese and Noblespirit and efforts to demonstrate to Cortese that the numbers were all wrong, the checks continued with the significant shortfalls. Noblespirit was compensating Permer at a rate of about 67% of the amount that each stamp sold for rather than the 75% to which Permer had reluctantly agreed.

21.     On December 27, 2018, Permer terminated the agreement in writing due to the substantial material, egregious and ongoing violations of the Contract and agreements of the parties by Defendants Noblespirit and Cortese.

22.     Representations were then made by Cortese that Permer would have the entire

Collection returned to him within three weeks or before the end of January, 2019. Over the course of the ensuing five months, most, but not all, of the Collection has been returned in a piecemeal fashion spread out over as many months. The last shipment of stamps returned to Permer from Noblespirit and Cortese was received in the end of June, 2019, and even then only after repeated reminders that the return of the Collection as well as an accounting was unacceptably late.

23.     During the five-month period from January through June of 2019, Cortese, both individually and through counsel, repeatedly misrepresented that the collection would be timely returned.

24.     On June 5, 2019, Noblespirit and Cortese misrepresented to Permer that all of the unsold portions of the collection were returned.

25.     Since the signing of the Contract on April 26, 2018, only promises have been made that an accounting of the Collection's sold items would be provided to Permer by Defendants Noblespirit and Cortese. To date, there has been no such accounting or even any itemization of fees.

26.     In the period of time between termination of the Contract and presently, Cortese has represented to Permer that the flash drive provided to Defendants Noblespirit and Cortese by Permer was discarded and never reviewed or considered. Cortese has also represented that part of the reason for the delay in returning the stamps was so that Noblespirit could make a photographic inventory of the whole Collection, thereby admitting that it had not done so at any previous time. In essence, Defendants Noblespirit and Cortese have never had a working knowledge or a reference of any type concerning what the full inventory of the Collection contained.

27.     To date, despite repeated demands by Permer, there has been no accounting provided by Noblespirit or Cortese and Noblespirit and Cortese continue to withhold some 2161 high value stamps from Permer and conceal their whereabouts without any title or right to do so.

28.     For the reasons set forth above, Permer brings the following causes of action against

Noblespirit and Cortese and seeks relief as set forth below.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
### v. Noblespirit only

29.     Plaintiff refers to the allegations contained in paragraphs 1 through 28, inclusive, and incorporates those allegations as though fully set forth here.

30.     On or about April 26, 2018, Defendant Noblespirit and Plaintiff Permer agreed to a consignment contract in Brentwood, California whereby Noblespirit would take possession of Plaintiff's Collection and provide to Plaintiff its brokerage services to sell all or part of the Collection. In exchange for these services, Noblespirit was to receive a commission.

31.     Defendants Noblespirit and Cortese took possession of the Collection and the flash drive containing a list of the inventory of all stamps within the Collection on or about April 26, 2018 and shipped the Collection to its facility in New Hampshire.

32.     After Defendant Noblespirit took possession of the stamp collection it committed numerous acts and omissions each of which amount to a substantial and material breach of contract and collectively amount to a continuing and on-going substantial, material and egregious breach of contract. These acts and omissions include, but are not limited to:

> a.     Disregarding, ignoring, discarding and/or destroying the flash drive containing the inventory that was provided to Defendants Noblespirit and Cortese and put into the possession of said Defendants simultaneously with the Collection;
>
> b.     Failing to conduct either an adequate inventory, or any inventory whatsoever, of Plaintiff's Collection at any time between taking possession of the Collection on April 26, 2018 pursuant to the Contract of same date (Ex. A) and the termination by Plaintiff of the Contract dated December 27, 2018;
>
> c.     Failing to adequately safeguard the Collection from loss, theft misappropriation, embezzlement, concealment, conversion, fraud, looting, gross negligence or other act causing damage to Plaintiff's Collection while the Collection or any part thereof was or is in the possession of Defendants Noblespirit and Cortese;

9

   d. Failing and refusing to properly compensate Plaintiff for sales of stamps in the Collection pursuant to the Contract and agreements between Plaintiff and Defendant Noblespirit;

   e. Failing and refusing to account for sales of stamps from the Collection or to provide Plaintiff with the contractually mandated calculated sales including expenses and any other fees being charged at the end of each month.

   f. Causing Plaintiff's property to substantially lose both substance and significant value, while in the possession of Defendants.

   g. Unduly delaying the return of a substantial portion of Plaintiff's property beyond a reasonable time;

   h. Failing entirely to return a substantial and valuable portion of Plaintiff's Property.

33. The acts and omissions of Defendants Noblespirit and Cortese, as set forth in paragraph 32 a through h above, constitute a failure and material breach of the contractual duties of Defendant Noblespirit.

34. Plaintiff has fully performed and met all conditions, covenants and promises required of him under the terms of the Contract and agreements of Defendant Noblespirit and substantially performed all of his obligations and burdens pursuant to the Contract and agreements between Plaintiff and Defendant Noblespirit.

35. Defendant Noblespirit's material, substantial and egregious past and on-going breach of contract has caused great financial detriment and substantial damage to the Collection owned by Plaintiff, and to Plaintiff's substantial harm.

36. As a direct and proximate result of Defendant Noblespirit's material breaches of its contractual agreements and obligations, Plaintiff has been damaged and is entitled to compensation on this first cause of action in an amount to be determined according to the proof at trial, pursuant to the law pertaining to the recovery of damages for breach of contract, which amount is in excess of the jurisdictional minimum of this court.

## SECOND CAUSE OF ACTION
### CONVERSION
### v. both Defendants

37.     Plaintiff refers to the allegations contained in paragraphs 1 through 36, inclusive, and incorporates those allegations herein as though fully set forth here.

38.     Defendants Noblespirit and Cortese, while in possession of the Collection, wrongfully exercised control over the property of Plaintiff beyond the authority granted to Noblespirit by Plaintiff.

39.     Plaintiff is, and at all times herein was, the rightful owner of the Collection.

40.     Defendants Noblespirit and Cortese substantially interfered with Plaintiff's property after taking possession of the Collection by knowingly and intentionally failing to return substantial portions of the Collection, including some 2161 stamps that were never returned after the Contract and agreements between Plaintiff and Defendant Noblespirit had been terminated, and by unduly delaying for an unreasonable amount of time the return of other substantial portions of the Collection. In doing so, Defendants Noblespirit and Cortese wrongfully prevented Plaintiff from access to his property.

41.     Plaintiff never consented to this conversion.

42.     Despite Plaintiff's repeated demands for the return of his property, Defendants Noblespirit and Cortese have wrongfully and without right, failed and refused to return significant and substantial portions of Plaintiff's property to him and unduly delayed the return of other portions of Plaintiff's property.

43.     In committing the acts set forth herein, Defendants Noblespirit and Cortese have and continue to cause serious interference with Plaintiff's right to own, possess and control the chattel that is the subject of this lawsuit.

44.     As a result of Defendants Noblespirit's and Cortese's failure and refusal to return substantial and valuable property owned by Plaintiff, Plaintiff has been harmed.

11

45.     As a direct and proximate result of Defendant Noblespirit's and Cortese's conduct in converting Plaintiff's property to their own, Plaintiff has been damaged and is entitled to compensation on this second cause of action in an amount to be determined according to the proof at trial, pursuant to the law pertaining to the recovery of damages for conversion, which amount is in excess of the jurisdictional minimum of this court.

**THIRD CAUSE OF ACTION**
**FRAUD**
**Intentional Misrepresentation and Deceit, Promissory Fraud,**
**Concealment, and Embezzlement**
**v. both Defendants**

46.     Plaintiff refers to the allegations contained in paragraphs 1 through 45, inclusive, and incorporates those allegations herein as though fully set forth here.

47.     Defendants, and each of them represented to Plaintiff that they would each comply with and honor the contractual obligations and agreements that were made by, between and among the parties. Said representations were implicitly on-going and continuing by virtue of the contractual arrangements of the parties.

48.     Specifically, on April 26, 2018 while at the home of Plaintiff in Brentwood, California Defendants, and each of them, represented to Plaintiff, that Defendants would undertake certain duties in good faith. Defendants had no intention of performing such duties in good faith at the time the representations were made. Such representations concerning Defendants Noblespirit's and Cortese's duties included, but were not limited to:

        a.    calculating the sales at the end of each month and paying Consignor by the 15th of the following month;

        b.    limiting his commission on sales to 15%;

        c.    providing Plaintiff with notice of Defendant Noblespirit's "set up fees," "auction fees" and "final fees."

        d.    safeguarding the property of Plaintiff while said property was in the possession of Defendants, and each of them.

        e.    refraining from theft, misappropriation, embezzlement,

12
COMPLAINT

concealment, defrauding or looting Plaintiff's property;

f.    making themselves aware of the inventory contained in the Collection by maintaining the flash drive containing the inventory that was provided to Defendants Noblespirit and Cortese by Plaintiff;

g.    conducting Defendants' own inventory of Plaintiff's Collection as soon as reasonably possible after taking possession of the Collection, if they were not to accept Plaintiffs inventory;

h.    properly compensating Plaintiff for sales of stamps in the Collection pursuant to the Contract and agreements between Plaintiff and Defendants;

i.    accounting for sales of stamps from the Collection in order to provide Plaintiff with the contractually mandated calculated sales including expenses and any other fees being charged at the end of each month;

j.    protecting Plaintiff's property from substantial loss of both substance and value, while in the possession of Defendants;

k.    returning to Plaintiff all of his property promptly and without undue delay upon termination of the agreements of the parties;

l.    maintaining transparency with Plaintiff concerning the whereabouts of his property rather than concealing said property.

m.    refraining from appropriating Plaintiff's property.

49.    On or about June 5, 2019, Defendants represented that they returned all of Plaintiff's property to him.

50.    The representations of Defendants Noblespirit and Cortese, as set forth in paragraphs 48 a through m above, and 49 and each of them, were false.

51.    Defendants Noblespirit and Cortese knew that said representations were false when made or the representations were made recklessly and without regard for their truth.

52.    Defendants Noblespirit and Cortese intended that Plaintiff Permer rely upon Defendants' representations in order to acquire the Collection.

53.    Plaintiff Permer did reasonably rely upon the representations made by Defendants, and each of them.

54.    The acts and omissions of Defendants, and each of them, as set forth in paragraphs 49 a

through m and 50, amount to civil fraud in the forms of deceit, intentional misrepresentation, promissory fraud, fraud by concealment and embezzlement.

55.     Plaintiff suffered substantial harmed.

56.     Plaintiff's reliance upon Defendants' misrepresentations and deceit was a substantial factor in causing Plaintiff's harm.

57.     As a direct and proximate result of Defendant Noblespirit's and Cortese's conduct in defrauding Plaintiff of his property, Plaintiff has been damaged and is entitled to compensation on this third cause of action in an amount to be determined according to the proof at trial, pursuant to the law pertaining to the recovery of damages for fraud, which amount is in excess of the jurisdictional minimum of this court.

### FOURTH CAUSE OF ACTION
### FINANCIAL ELDER ABUSE
### v. both Defendants

58.     Plaintiff refers to the allegations contained in paragraphs 1 through 57, inclusive, and incorporates those allegations herein as though fully set forth here.

59.     Defendants Noble Spirit and Cortese misappropriated, converted, hid from and wrongfully retained the property of Plaintiff by use of an agreement (Ex. A).

60.     At the time of the misappropriation, conversion, hiding and wrongful retention of Plaintiff's property, Plaintiff was over the age of 65.

61.     Defendants Noble Spirit and Cortese misappropriated, converted, hid from and wrongfully retained the property of Plaintiff for a wrongful use and with the intent to defraud Plaintiff.

62.     Defendants Noble Spirit and Cortese knew that their conduct was likely to be harmful to Plaintiff.

63.     Plaintiff suffered substantial harm.

14

64.     Defendants' conduct was a substantial factor in causing Plaintiff's harm.

65.     As a direct and proximate result of Defendant Noblespirit's and Cortese's financially abusive conduct toward the elder Plaintiff Permer, Plaintiff has been damaged and is entitled to compensation on this fourth cause of action in an amount to be determined according to the proof at trial, pursuant to the law pertaining to the recovery of damages for financial elder abuse, which amount is in excess of the jurisdictional minimum of this court.

## FIFTH CAUSE OF ACTION
## NEGLIGENCE
### v. both Defendants

66.     Plaintiff refers to the allegations contained in paragraphs 1 through 65, inclusive, and incorporates those allegations herein as though fully set forth.

67.     Defendants Noblespirit and Cortese, together and separately, owed a duty of care to Permer, such that Defendants, and each of them, were required to conform their conduct for the protection of Permer against unreasonable risks of injury and harm to his property. Each Defendant was, and is, under a legal duty to act as an ordinary, prudent and reasonable person and the law assumes that a person will take precautions against creating an unreasonable risk of harm to the property of others which are reasonably foreseeable.

68.     Defendants, and each of them, were reckless, careless and/or willfully and wantonly negligent in violation of their legal duty to act as an ordinary, prudent and reasonable person for their failure to adequately, competently and appropriately meet this minimum standard of care without causing harm to Plaintiff's property. Each of the defendants are in breach of this standard of care and their duties thereunder for failing to adequately safeguard Plaintiff's property

69.     Plaintiff suffered substantial loss of value to his property due to the negligence of both Defendants.

15

70.     As a direct and proximate result of Defendant Noblespirit's and Cortese's negligence, Plaintiff has been damaged and is entitled to compensation on this fourth cause of action in an amount to be determined according to the proof at trial, pursuant to the law pertaining to the recovery of damages for financial elder abuse, which amount is in excess of the jurisdictional minimum of this court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Klaus Permer requests entry of judgment in his favor and against Defendant Noble Spirit on the First Cause of Action and in Plaintiff's favor and against Defendants Noblespirit and Cortese, and each of them, on the Second, Third, Fourth and Fifth Causes of Action as follows:

1.     For all of Plaintiff's compensatory and actual damages in the amount of $1,463,460.00;

2.     For interest on said sum at the maximum interest rate permitted by law;

3.     For punitive damages;

4.     For all of Plaintiff, Klaus Permer's, reasonable attorneys' fees;

5.     For all costs of suit;

6.     For such other and further relief as the Court may deem proper and just.


LAW OFFICES OF WILLIAM G. HANSON


Date: July 8, 2019


William Hanson,
Attorney for Plaintiff, KLAUS PERMER